# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Matthew F. Kennelly | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 10 C 4636 | **DATE** | 10/24/2011 |
| **CASE TITLE** | Daniel Rappe (#22472-424) vs. Paul Harvey, et al. | | |

**DOCKET ENTRY TEXT**

For the reasons stated below, the Court denies defendant Harvey's motion to dismiss [dkt. no. 19]. The Court grants plaintiff's motion to extend time to file his amended complaint [dkt. no. 38] and, based on its order of 9/12/11, terminates plaintiff's motion for a judicial letter [dkt. no. 42]. The Court directs the Clerk to issue summonses to newly named defendants Officer Frazier, Officer Jackson, and the United States, and directs the Marshal to serve those defendants. Plaintiff is directed to cooperate with the Marshal in completing any forms necessary for service of summons. Dr. Harvey is directed to answer the amended complaint by no later than 11/14/11.

■[ For further details see text below.]                                      Docketing to mail notices.

# STATEMENT

Daniel Rappe, a federal prisoner formerly housed at the Chicago Metropolitan Correctional Center (MCC), brought a pro se *Bivens* action against Dr. Paul Harvey, a physician at the MCC. Rappe alleged in his original complaint that Dr. Harvey violated his constitutional rights by acting with deliberate indifference to his medical needs and coercing him to accept medical treatment against his will and religious beliefs. With leave of court, Rappe later filed an amended complaint in which he named additional defendants and also sued the United States under the Federal Tort Claims Act (FTCA).

Dr. Harvey has moved to dismiss the *Bivens* claim against him on the ground that 42 U.S.C. § 233(a) grants him absolute immunity. He supported the motion with an affidavit by Captain Ben Brown, the Commissioned Corps Liaison for the Health Services Division of the Federal Bureau of Prisons. Captain Brown states that Dr. Harvey was a Public Health Services official during the time alleged in Rappe's suit. Rappe argues in response that Dr. Harvey's alleged actions were not within the scope of his employment and that the Court allow discovery before deciding the issue. In reply, Dr. Harvey argues that the Court should not grant discovery or a hearing because Rappe has failed to plead facts sufficient to support a claim that Dr. Harvey acted outside the scope of his employment.

Rappe was housed at the MCC as a pretrial detainee. In July 2008, he complained of abdominal pain and bloody stool, MCC medical personnel sent him to Thorek Hospital. Physicians there diagnosed Rappe as suffering from a bleeding duodenal ulcer and provided treatment. They also prescribed Omeprazole, a medicine used to treat peptic ulcers. Upon his return to the MCC, however, the MCC pharmacist was told to provide Rappe with half the dosage the Thorek physicians had prescribed.

On August 6, 2008, Rappe was examined at the MCC by Dr. Bonnie Nowakowski, a staff physician who was acting as clinical director while Dr. Harvey, the clinical director, was away. Dr. Nowakowski submitted a

**STATEMENT**

request for the full dosage of Omeprazole prescribed by the Thorek physicians, but Dr. Harvey cancelled this request, saying he wanted to evaluate Rappe first. Dr. Nowakowski's notes reflect that Dr. Harvey requested medication for Rappe on August 12, 2008. Rappe did not receive the medication, however, because (as he later learned) the request was never written up.

Rappe continued to request medication and make complaints regarding his condition. On September 12, 2008, Dr. Harvey approved the Omeprazole, but at half the dosage prescribed by the Thorek physicians. Rappe alleges that as a result, his condition continued to worsen. Dr. Nowakowski placed Rappe in the chronic care clinic so that Dr. Harvey could assess his long term treatment. An evaluation was scheduled for October 31, 2008, but Rappe says it never took place. He continued to make requests for examination and treatment over a period of several months, to no avail.

Dr. Nowakowski examined Rappe on February 10, 2009 for an "emergency encounter" and noted in her report that Rappe's condition had worsened. A lab report dated February 6, 2009 indicated that Rappe had low red blood cell, hemoglobin, and hematocrit counts, indicating internal bleeding. Dr. Nowakowski noted on February 20, 2009 that she was becoming concerned and that she had already made multiple requests for further testing and treatment.

Dr. Harvey examined Rappe on February 23, 2009, and instructed him to stop taking Tylenol, which he had been taking to alleviate his pain. Dr. Harvey also stated that Rappe's recent lab tests were "normal." Rappe alleges that Dr. Harvey's demeanor during this examination suggested that he "enjoyed denying plaintiff hope of treatment."

On March 1, 2009, Rappe was taken to Northwestern Memorial Hospital in by ambulance due to blood loss. He remained there for ten days, and his condition began to improve during that stay. During this time Rappe was treated and his condition began to improve. Once he became lucid, however, Rappe refused further blood transfusions. The Northwestern physicians told Rappe that he might die without additional blood transfusions, but he continued to refuse. Rappe says that he had grown tired of the pain and suffering and did not want to be healed to the point where he would be returned to the care of Dr. Harvey. Instead, he says, he wished to place "his faith and fate in the care of a higher power by letting God decide whether or not to heal him." Dr. Harvey informed the hospital and Rappe that he intended to remove Rappe back to the MCC and obtain an emergency court order for treatment. Rappe says that as a result of this threat, he agreed to allow hospital personnel to continue treating him.

Rappe was released from the hospital on March 10, 2009. His treating physician gave express instructions to take 40 mg of Omeprazole twice daily for eight weeks. Dr. Harvey, however, prescribed only one 20 mg dose per day through May 4. Rappe says that his requests for additional medication were officially denied but that he was able to obtain additional medicine from "sympathetic MCC medical personnel" and through "alternate means." Over time, he says, his condition improved.

The physicians at Northwestern Hospital also prescribed a "soft diet" to avoid aggravating his condition. He alleges that Dr. Nowakowski ordered this but that Dr. Harvey cancelled the order and a later reinstatement of the order by Dr. Nowakowski. Dr. Rappe stated that a "bland diet" was not "clinically indicated for peptic ulcer."

Rappe filed this suit on July 26, 2010. He filed an amended complaint on August 4, 2011 to add a claim against the United States under the FTCA and to name additional individual defendants.

**STATEMENT**

Pursuant to 42 U.S.C. § 233(a), a suit against the government under the FTCA is the exclusive remedy for a claim against a member of the Public Health Service (PHS) involving the performance of medical or related functions within the scope of the PHS member's employment, including treatment of or failure to treat an inmate. *Hui v. Castaneda*, 130 S. Ct. 1845, 1851 (2010). Federal law governs whether a federal employee was acting within the scope of his employment, *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 435 (1995), but Dr. Harvey expressly concedes that to determine this issue, a federal court looks to the law of the state where the alleged acts took place, in this case Illinois. Def.'s Reply at 2.

Several Illinois cases indicate that when a government employee acts out of personal animosity toward an injured party, the employee's acts may be outside the scope of his government employment. *See, e.g., Sellers v. Rudert*, 395 Ill. App. 3d 1041, 1047, 918 N.E.2d 586, 592 (2009); *Nikelly v. Stubing*, 204 Ill. App. 3d 870, 876, 562 N.E.2d 360, 364 (1990). Rappe has alleged sufficient facts to invoke this apparent rule. His allegations that Dr. Harvey repeatedly overruled, cancelled, or ignored treatment prescribed by other physicians might not be enough by themselves, but Rappe also alleges that during at least one visit, Dr. Harvey displayed a demeanor indicating that he took pleasure from denying Rappe treatment and seeing him suffer. That allegation gives rise to a viable claim of personal animus. The Court makes no finding, of course, that what Rappe alleges is true. At the motion to dismiss stage, however, the Court is required to take Rappe's factual allegations as true. And even though the hurdle established by *Sellers* and other Illinois cases may be quite difficult for Rappe to clear, his allegations entitle him to an opportunity to try.

The Court also notes that it has not yet ordered service of summons on the defendants newly named in the amended complaint. The Court will do so by way of this order.